Number 171454, United States v. Vincent C. Anzalone. Ms. Brittany, good morning. Good morning. May I please the court? Xanabu Amala representing Vincent Anzalone, the appellant. I would like to reserve one minute for rebuttal. One moment? One minute. Oh, I'm sorry. I misunderstood that. All right. The case we have before this court stems from the government's mass distribution of child pornography. Counsel, let's see if we can cut to the chase here. Sure. You have a number of arguments that relate to Fourth Amendment aspects and the magistrate, judges, authority, etc. That's correct. You also have an outrageous government misconduct argument. Yes. In the former class, the Fourth Amendment type arguments, do any of those survive our decision in 11? Yes. The 11 decision really was based on good faith and a Rule 41 violation. We are raising a separate probable cause challenge which wasn't addressed in 11. A good faith analysis challenge to the probable cause and also whether jurisdictional errors are the type of errors to which good faith does not apply. I thought that latter question was covered in 11. 11 discussed, regardless of whether there was a Fourth Amendment analysis or whether there was a Fourth Amendment error, whether the office was active in good faith. What we are arguing is that you don't reach a good faith analysis when you have a warrant that was issued without jurisdiction. I thought 11 had decided that question because there you had a warrant that was issued in exactly the same way and we decided that we could reach the good faith issue. There wasn't an analysis on whether... There may not have been an analysis, but the point was raised and decided. And I'm just wondering if it's open to us. Judge Judt for a way wrote a comprehensive opinion. Thank you. I think the issue was raised, but I don't think we can say it was decided because there isn't anything in the written decision that says... Of course it was decided because we reached good faith. We could not have reached good faith if we didn't reject the claim that good faith didn't apply in this situation. Well, I think if the court would have rejected the claim, we would expect to see something actually in the written decision that said good faith and jurisdictional errors... You acknowledge the point about whether good faith not applying was raised. Raised in 11. Yes, the specific issue raised was whether the warrant was going to have an issue. And so in the face of that argument, isn't a holding that good faith applies and therefore the warrant is permissible? Doesn't that reject the argument that it is invalid ab initio, isn't it? Necessarily? I think an important point is that one, we weren't specifically arguing that the warrant was void ab initio because we recognize that the warrant may have had some validity, at least in the eastern district of Virginia. So our argument is a bit broader than that. And again, I think because we don't have something in the written decision that specifically says, when you're talking about jurisdictional errors or analysis about jurisdictional errors and warrants, we're not going to reach a good faith analysis. If I may, I'd like to speak a bit on that, just in case the court happens to agree with that conclusion. I would like to hear more argument on the second point. Which point? About outrageous conduct by the government. Sure. If you don't want to, I'm ready to read, but to me that is not necessarily foreclosed by my decision, but maybe my other decisions in this court. Right, and we recognize the decisions in Santana have talked about the issues with raising outrageous misconduct, especially when the harm the defendant is taking issue with is related to third-party harm. But also Santana didn't foreclose the possibility that there could be outrageous government misconduct based on third-party harm. And I think the reason the door was left open for situations that are so egregious, where the government has acted so out of line, that the court believes there's no other way to curb this misconduct. The government argues, I think with some validity, that one of the reasons they were taking this avenue of law enforcement was because they were able to help or save or retrieve information that was hurting other children. Right, and I think that might be a separate point. Why is it a separate point? That's the argument they use to claim that it's not outrageous. Well, we're not necessarily challenging the use of the NITT or using particular techniques in these child porn cases, but the government did have options. They didn't have to use actual child pornography. They could have posted legal child erotica in order to effectuate their investigation. They could have posted error messages so that when people actually did click on a link that indicated there was child porn, people weren't actually seeing the child pornography. And again, I want to remind the court that the government has repeatedly talked about how much harm there is when each individual, when there's an individual posting of an image that is pornographic. Do we have any way of assessing, presumably your view would be what the government should have done would have been shut down the site? Exactly. Okay, so how long was the site then kept up? For two weeks. And do we have any sense of how many images would have been accessed by how many people over the course of those two weeks in consequence of the government keeping the site up? We do. There were about 9,000 images and 200 videos made available during that two-week period. 13,000 links were uploaded when the FBI ran the website. There were actually 67,000 links that were actually clicked on. And when I'm referencing these links, it's not a link to one image. It's links to files which contain multiple images and multiple videos. And that doesn't even include the activity that the website didn't record. For example, someone could have taken a screenshot of an image on the computer. And is there any precedent the government identifies for some analogous type of sting operation they've done where they've done it using actual child pornography and exposing that much of it to that many people? We've seen cases where child pornography has been sent to one individual. When we're talking about the actual scope of this investigation, I think the cases that are more similar are actually drug cases. But again, child pornography is very different. There isn't necessarily any harm in handing somebody a packet of drugs. That's not the case when you're dealing with child pornography. In the Santana case, they talked about how large the drug distribution was. It was 13 grams, which equated to about 2,500 doses. You would assume, like, once those doses are sold on the street, they're gone. With child pornography, something is published, it can be shared, and it can continue to be shared. And the government was aware that these types of investigations cannot be controlled, that when you put these images online, it's going to be very difficult to be retrieved. So you're basically arguing for a special rule in child pornography cases? It might not necessarily be a special rule in child pornography. Well, I mean, in drug cases, it happens all the time that the government does sting operations with actual drugs. Right, and it's always done on a case-by-case analysis, so I wouldn't want to say that. You're saying that there's a special rule for victimless crimes? There's a different rule when you're talking about victimless crimes. But the general rule is the government cannot create victims? Yes. And you're saying here the government created thousands of victims? It created, yes. And Judge Byron asked you before about precedent. What's the closest case in which any court of appeals affirmed the dismissal of a conviction based on outrageous government misconduct? Any kind of outrageous government misconduct. We don't have a close case. Yes, that's because there isn't any such case. Has any court of appeals, since Russell was decided in 1973, the Supreme Court's dictum in Russell, has any court of appeals ever sustained the dismissal of a conviction for outrageous government misconduct? Since Russell, I can't think of a case off the top of my head. No, because I don't think there is one. But this is a doctrine that is talked about in dictum, but has not been put into practice at all. Yes, Judge Sully, if I might just answer. But the doctrine is still left open because there are certain types of harms that are just so egregious, and we argue that child pornography, at least on the distribution on this level, meets that standard. Thank you. We have one minute later. Mr. Crum, good morning. Good morning, Randall Crum, on behalf of the government. If I could just return briefly to the question of probable cause and the question of how broadly this Court's opinion in Levin sweeps. I think it is important on the issue that Your Honor, Judge Sully talked about, the question of whether the jurisdictional error precluded the application of the good faith exception was clearly presented. It was the basis on which the district court had refused, had dismissed it, because it found that the good faith exception did not apply to a warrant that was void ab initio, and that's the reason that it found that it could not apply that exception and uphold the warrant. So in reversing this Court, it necessarily had to disagree with that ruling and apply the good faith exception. Do you read Levin's lawsuit to address the just straight probable cause good faith issue? What's unique about this case is that this case is not one in which we're just talking about a prior case that addressed the same legal issue. This is a case that addressed the exact same warrants based on the exact same affidavit and considering the exact same actions of the same actors, that is, the individuals who put in place the warrant. Is that a yes to my question or a no to my question? No, no, no. Our answer, and I was getting to it, I'll get to it more quickly. But isn't jurisdiction something you have to prove in every case, even though they may be related cases? Perhaps a little in this case. I mean, I think the issue is whether the jurisdiction defeats the application of good faith exception. I think that issue holds over from one case to this. But we do believe that it applies to probable cause, and the reason is the unique circumstances of the case. Where we're talking about a decision that did not just address the same conceptual legal issue, but the same issue on the same facts precisely. There's no case-specific facts here. So walk me through it. Your argument is it was raised and decided below in Levin on the jurisdictional point. Right. So when we then concluded good faith didn't apply, we were rejecting the district court's view that you don't reach the good faith issue on jurisdictional. I checked that. I'm asking you now if we take the argument the defendant is making with respect to good faith and probable cause. Yes. Put aside the jurisdictional point about the geographic issue concerning the warrant. Was that issue also raised and decided below in Levin, and then decided and addressed by the court of appeals in Levin? It wasn't the focus of the decision below, because it was decided on the jurisdictional basis and didn't go any further. So are there any new variants? It's based on the language in this court's opinion, which says specifically that none of the exceptions to good faith apply. It lists all of them, including lack of good faith. But isn't that, I guess the way I read that initially, maybe you have a different reading. I thought it was simply saying that that exception about good faith and probable cause would not be one that would fit as an explanation of the jurisdictional issue. In other words, the exception the district court carved out in Levin doesn't fit any of the four exceptions that Leon listed. That's why in Levin we said the district court was in error. But that's different than saying the court of appeals, including that, was making a merits determination that as to that exception in Leon concerning whether there was facial implausibility about probable cause, whether that was met or not. Right. We don't rely exclusively on probable cause. The fact that Levin precludes that argument, we make a merits argument of probable cause. Our argument is based on the language in which the court, again, enumerates the four exceptions and says On the merits argument of probable cause, your argument is just that even if it's a somewhat close case, you couldn't say that it was facially implausible. Our argument is actually that it does satisfy the probable cause standards the district court found based on the But you separately make a Leon argument on that point. We did as well. Again, so whether one reaches the merits as the district court did or finds that at least it doesn't trip over the line into violating good faith, we think that it's clear on the probable cause matter. And similarly with respect to the reckless disregard issue, which is that there was certainly no evidence the district court rejected the idea that there was any recklessness that occurred. And given that whole language has not been shown to be clearly erroneous, we had that exception also. On the outrageous government conduct, I understand the issue under Russell and whether it applies to in what circumstance it might apply to, if ever, to validate a conviction based on harm to a third party. But just with respect to the harm to the third party, what would be the sentence that a private actor would face for having distributed as much child pornography as the site distributed in the two weeks the government operated it? Without looking at the guidelines, I don't know. It would probably be substantial. It would be like a million years? It wouldn't quite be that great. I think it might be. It certainly would be substantial. What's each distribution act? What's the sentence for each one? Again, without looking at the guidelines, I can't tell you. I don't disagree. Is it ten years minimum? Per image? Again, I would be guessing, so I don't want to do that. But you see the problem. It's one thing. There are certainly victim-causing crimes the government could participate in that you wouldn't even think to participate in because it would be so outrageous to do it. And then how are we supposed to evaluate what meets that threshold? And one normal place to look is how does the government itself view the gravity of this offense? And this offense, if I look at it, people are in jail for an awfully long time with no mitigating circumstance considered in consequence of exactly this conduct, and yet the government then participates in it. And the reasoning behind that stiff sentence is the harm caused to victims. So it's hard not to read the government's brief here without thinking there's something of the government saying, you know, it's not really that harmful. And that's hard to take when people are being sentenced for as long as they are on the theory that it is really that harmful. So I don't know how you address that. My response would be that we're not trying to argue that this did not present a real challenge for the government and a significant question for the government to choose to continue to do it. It hasn't been done before. It was something they undertook after a great, lengthy consideration about the relative balance of the extreme difficulty of rooting out this kind of crime in the first place, of rescuing actual children, of finding the worst of the worst who are actually producing this stuff, when you have something like the dark web that grants them anonymity and makes it very difficult to find them, you know, versus the risks imposed by continuing it in any fashion. The balance was struck in the direction, I mean, 49 children were rescued, thousands of individuals involved in distributing and perhaps making pornography, child pornography, were arrested. So when you look at it in that light, Mr. Crowe, what you're really saying is that the harmfulness cuts both ways, that the conduct is so pernicious that the government should be given leeway to devise tactics, obviously within some limits, to combat this sort of terrible crime, and that to call those tactics outrageous just because the harm that the defendants set out to participate in gets perpetuated by the government doesn't really make much sense. Isn't that kind of the basis of your argument? In essence, I mean, the problem you're setting out to attack is extremely difficult and extremely damaging, and the problem of dealing with the constant advancements of technology would make it ever more difficult to track down the people who are involved in it, and what used to be videotapes distributed in the Postal Investigator would track people down much easier in the past than it is now. And I think what this reflects is obviously a difficult decision made by the government to attempt a method to, for a short period of time, try to identify those people as quickly as possible. And again, they were authorized to operate it for a month. They shut it down after two weeks, I think, believing that they had done what good they could and that the balance of harms was such that there was no justification that they felt strongly could justify continuing to operate it as they did. I would want to respond briefly to the question that it could have been done differently through the use, for example, of dead links or any sort of other types of images, fake images or something of that kind. The difficulty there is that any change to the site would have, and this was clear from the testimony, would have percolated through the community of people who seek this stuff out and who are extremely, extremely careful about their privacy and finding out if they're detected. So if the government had simply replaced the site with one that was just like it but which none of the links led to anything, within a day no one would access it anymore. It would have ceased to serve its purpose and would have achieved nothing at all. So there was not an easy answer, as is suggested here, where it could have been done. The same positive results could have been obtained in a less dangerous or risky way. Has it been repeated since? Not to my knowledge. I mean, all of the cases that I'm aware of are this precise warrant in this particular circumstance. So I'm not aware of any attempt. Is there another example of a sting operation that involves the government participating in what, by the government's own account, is a crime that has victims? Well, I would imagine in cases, in frauds and that kind of thing, if there's government participation, actual people do lose money, although presumably the government's intent is to make them whole in the end. But in any operation in which there are actual losses, people lose money as those. But I don't know. This is unique. And there are government cases of participating? I believe so. Again, this is responding to a question that I didn't address in the brief. But I believe there are sting operations involving fraudulent financial activities in which there could well be. The government defrauds third parties? No, I would say the difference is that the role that the government plays would be different. So to the extent that you're saying it's the one in which the government is providing the thing believed to be harmful, I don't know that I can give you an example of that. Are there any further comments on the briefs remaining? Thank you. If I may touch briefly again on the outrageous government misconduct claim, one thing this court should keep in mind as an example of why we need to be careful in child pornography cases is that defense counsel, when they're defending a client, can't even have free access to discovery. They're required to go to a government facility to review the evidence. And that is because we don't want child pornography freely floating out there for people to distribute, and that's the exact type of conduct the government engaged in. They gave unfettered access to hundreds of thousands of individuals around the globe. They were fully aware that that would happen. They were aware they wouldn't be able to. There's still the question, why should your defendant be the beneficiary of that, since your defendant is also participating in the very same problematic conduct? I mean, it may be one thing as a policy matter to criticize the government for having made the choice. It did, given its own account of the harmfulness of exposing these images to people, but it's a little hard to understand why somebody who themselves is charged with participating in that conduct should be the beneficiary of the government having made that choice. And Judge Barron, it is a sizable remedy, but it's the only remedy we think that would actually be effective to curb this type of government conduct. It's like, when else is the government going to think that there are limitations on the type of investigations that they can do unless there is something that tells them your indictments will be dismissed if you continue in third-party harm of this scale. Thank you. Thank you.